UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO JULIAN LUNA, | No. 2:04-cv-0627 MCE GGH P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SCOTT KERNAN, | |
| Respondent. | |

Petitioner is a state prisoner represented by counsel, proceeding with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

On October 16, 2012, the district court adopted this court's findings and recommendations and granted respondent's motion to dismiss the petition as time barred, based on the finding of no extraordinary circumstances to support equitable tolling.[1] On April 29, 2015, the Ninth Circuit Court of Appeals addressed the issue of equitable tolling in regard to petitioner's untimely federal habeas petition. It found that the conduct of petitioner's counsel in regard to the federal habeas petition was an extraordinary circumstance which prevented petitioner from timely filing his petition. The court vacated the district court's judgment dismissing the petition as untimely, and

---

[1] The district court did not reach the issue of whether petitioner diligently pursued his rights.

1

remanded "for the district court to determine in the first instance, after conducting an evidentiary hearing if necessary, whether Luna diligently pursued his rights through the date of filing, June 3, 2011." Luna v. Kernan, 784 F.3d 640 (9th Cir. 2015). On August 28, 2015, pursuant to this court's order, petitioner filed a motion to expand the record. As it was unopposed, it was granted on October 7, 2015.

The expanded record indicates that petitioner had written over thirty letters to his attorney inquiring about his case prior to June 3, 2011, the date the amended petition was filed, and the date by which petitioner's diligence in pursuing his rights was to be assessed, according to the Ninth Circuit Court of Appeals order. See ECF No. 65-2. In light of those letters, respondent was given the opportunity to file a brief in opposition to a potential finding of diligence. That brief, filed November 9, 2015, has now been considered. Petitioner has not filed a response. Based on the record, the court now finds that petitioner was diligent, and recommends that the case proceed.

DISCUSSION

To be entitled to equitable tolling, petitioner must show that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstances stood in his way and prevented timely filing. See Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562 (2010); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009). The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." See Holland, 560 U.S. at 653, 130 S.Ct. at 2565; Bills v. Clark, 628 F.3d 1092, 1096 (9th Cir. 2010).

Respondent's objections to a finding of diligence are threefold. First, respondent claims that the limited record does not support that petitioner was diligent through filing, as there are gaps as long as 14 ½ months during which there was no correspondence between petitioner and counsel Wiseman. Second, respondent claims that correspondence from Wiseman to petitioner in 2005 indicated that a federal petition had not yet been filed, which should have prompted petitioner to become aware of his attorney's performance at that time, and therefore petitioner's failure to act as of that time indicates lack of diligence. Respondent argues that petitioner's ability to file his own pro se habeas petition in March, 2004 demonstrates that he was capable of

evaluating his attorney's performance and filing his own habeas petition.

Respondent's third argument is that the expanded record contains redactions which do not reveal the context of the correspondence in order to determine whether it was reasonable for petitioner to continue to rely on his attorney. For example, respondent suggests, the letters could have been about a different case altogether. Consequently, respondent requests either that petitioner be ordered to file the original letters or to produce them to the court for *in camera* review.

Taking respondent's third argument first, the court has once again reviewed the entire, unredacted correspondence record *in camera* as it did to make its first findings. This time, however, the correspondence was reviewed in light of the Ninth Circuit's order, which specifically directed consideration of petitioner's diligence through June 3, 2011, which was a new paradigm in which to view the events, the former one by this court having been to determine whether the attorney's actions constituted an extraordinary circumstance, in consideration of correspondence dated only through February 14, 2005, the statute of limitations deadline.[2]

Not only do the unredacted versions of letters written by petitioner reveal further diligence than the expanded record indicates, but additional letters which are not part of the expanded record but rather the sealed record in this case indicate that petitioner contacted his attorney on additional occasions.

The unredacted version of a letter dated February 13, 2005, for example, requests that petitioner's attorney take certain specific action in his case, and then states, "please I beg you." In concluding the letter, petitioner states, "What is the plan to prove to the courts that my case can be won or for a new trial? Please, respond to my question? You won't give up on me, will you

---

[2] The undersigned had previously found that letters filed right at the time of the expiration of the statute of limitations, or afterwards, were of no legal consequence since the egregious acts of attorney abandonment had occurred after the expiration of the statute of limitations. Plaintiff's diligence, or lack thereof, would not have changed this fact. However, the Ninth Circuit determined that the entire course of the attorney's inaction, both pre and post-limitations expiration, was relevant to the equitable tolling issue. Thus, plaintiff's diligence had to be explored as part of the tolling analysis. The present analysis here, of course, proceeds on the directives of the Ninth Circuit.

1  sir?" See ECF No. 65-2 at 15. The statute of limitations expired the day after the letter was

2  written. Another redacted letter, dated May 17, 2005, read in full, contains the statements, "Can't

3  you come and see me we need to talk!," … "I do also know [you're] busy as well, but I need to

4  know things," and "I need a fighter it's my life and freedom…" See ECF No. 65-2 at 18. A letter

5  dated September 4, 2005, in unredacted form contains the statement, "please respond A.S.A.P.!!"

6  See ECF No. 65-2 at 20. The remainders of these letters do not refer to other cases but to specific

7  details about petitioner's criminal case or other matters not relevant to equitable tolling.

8        Other redacted letters contain similar pleas for help in the concluding lines. See e.g. letter

9  dated August 7, 2007 ("respond to my letters please!"), see ECF No. 65-2 at 34; letter dated

10  December 10, 2007 ("I'm hoping that is still the case and promise of you. I'm sure you are a

11  good attorney and doing your best to help me and my case…"), see ECF No. 65-2 at 37; letter

12  dated April 25, 2010 ("Please respond to this and a update on my appeal status. I been nothing

13  but stressed out over all this."), see ECF No. 65-2 at 43. One letter, dated November 11, 2005,

14  does not appear to be in the expanded record at all. It discusses the substance of petitioner's case

15  and at the end states, "please respond to these questions?!"

16        In sum, the *in camera* record indicates that petitioner continued to rely on his attorney,

17  and that his demonstrated diligence was not weakened by any of the unredacted records.

18  Moreover, as detailed below, the undersigned will not task petitioner with knowing precisely

19  when-to-say-when in the circumstances presented with respect to continued representation by his

20  attorney. There had been some contact by the attorney throughout this period; petitioner simply

21  did not realize his attorney was being disingenuous.

22        Respondent's second argument also fails. Well after the limitations period expired,

23  petitioner's correspondence indicates that he did not understand that the statute had expired and

24  relied on his attorney despite his knowledge of how to file a petition. An unredacted version of

25  the February 4, 2007 letter suggests additional issues for the petition, indicating that petitioner did

26  not think it was too late to file and even add new grounds. He then closed the letter with, "please

27  respond and send me cop[ies] of all your paperwork?" See ECF No. 65-2 at 33. Wiseman's

28  letters to petitioner well after the limitations period make assurances regarding the habeas petition

4

soon to be filed and give no indication that the limitations period had already expired. On June 14, 2010, Mr. Wiseman wrote to petitioner to explain his plans with regard to the planned federal habeas petition. (ECF. No. 65-2 at 47-48.) On July 23, 2010, Mr. Wiseman again wrote to petitioner to set forth which grounds were planned for the petition and which grounds would not be pursued because they were inappropriate and why. (Id. at 49-50.) Similar letters were written on August 23 and September 14, 2010, explaining the progress of the federal petition and its planned filing, as well as the substantive grounds to be raised and those to be omitted. (Id. at 51-52, 56-57.)

If petitioner thought, as respondent suggests, that his counsel had not acted as of 2005, when the limitations period expired, and would have been on notice to file his own amended petition, he surely would have been dissuaded from that idea by his counsel's repeated assurances that his federal petition was proceeding in an orderly fashion with no mention whatsoever of a time bar. He surely would have placed reliance on his attorney's knowledge of habeas corpus law and the rules on timely filing, especially in light of his own lack of such knowledge. In fact, the Ninth Circuit stated in this regard, "[e]ven after wrongfully dismissing Luna's original pro se petition and then missing the 1-year deadline for filing a new petition, Wiseman led Luna to believe for another six-plus years that litigation of his federal habeas petition was moving forward, albeit slowly, toward a hearing on the merits." Luna v. Kernan, 784 F.3d at 647. The court additionally stated that after the statute had expired, "Wiseman continued to assure Luna that everything was on track and that they would soon be returning to federal court." Id. at 644. In fact, the Ninth Circuit found that Wiseman actually "misled Luna to believe that a fully exhausted federal habeas petition would be filed 'shortly.'" Id. at 647. Based on this deception, it was reasonable for petitioner to rely on it, despite his knowledge that no federal petition had been filed, and his experience in having filed his own federal petition. The Ninth Circuit acknowledged this fact: [h]ad Luna been informed of the truth – that the filing deadline was three weeks away and that Wiseman would not be filing a petition within that timeframe – Luna could have filed a *pro se* petition on his own, as he had already done once before, prior to Wiseman's

////

appointment." Id. But Luna was not so informed. In finding that causation had been satisfied, the court concluded:

> But for Wiseman's misconduct, Luna would have filed his federal habeas petition on time. We know that to be true because Luna had filed his petition on time before Wiseman ever arrived on the scene. Wiseman's misconduct consisted of undoing Luna's diligent work and then misleading Luna to believe for six-plus years that everything was proceeding on track in federal court when that was not the case. Nothing more need be shown to demonstrate causation in this context.

Id. at 649.

This statement is based on the Ninth Circuit's knowledge that petitioner would have inferred that no federal petition had been filed, and that petitioner was capable of filing a habeas petition on his own. With this unmistakable holding, the undersigned need not now guess how the Ninth Circuit would treat respondent's argument on these points.

Although these statements pertained to the issue of whether Wiseman's conduct was egregious professional misconduct of an extraordinary nature, they are similarly relevant to the diligence question. In regard to the latter issue, the Ninth Circuit specifically stated, "[u]nder some circumstances, communicating with one's lawyer and relying on the lawyer's assurances that everything is proceeding apace can suffice to demonstrate diligence." Id. at 649-50. The Ninth Circuit's citation to Doe v. Busby, 661 F.3d 1001 (9th Cir. 2011), bears repeating as its facts are analogous to those found here:

> In Doe v. Busby, 661 F.3d 1001 (9th Cir.2011), for example, we held that Doe had shown reasonable diligence by continuing to urge his attorney to file a federal habeas petition over a period of three years, even after learning that his attorney had blown the original filing deadline. Throughout that period, the attorney told Doe that a petition could not be filed until new evidence was discovered but assured Doe that the search for such evidence was ongoing. Id. at 1013–14. Nothing alerted Doe that he needed to take further action to protect his rights until the attorney abruptly resigned. "Untrained in the technicalities of habeas law and incarcerated, Doe was in no position to question a plausible explanation for the attorney's delay or to observe the thoroughness of the attorney's supposedly ongoing investigation for evidence." Id. at 1014. We concluded that a reasonable person in the petitioner's shoes, "if asked about the status of his or her lawsuit, would be justified in replying, 'My lawyer is handling it.'" Id. at 1015.

6

1    Luna, 784 F.3d at 650.

2           Here, petitioner also urged his attorney on a regular basis to file his federal petition.  Even
3    more persuasive than in Busby is the fact that petitioner was not informed until 2011 that his
4    attorney had blown the filing deadline, and petitioner had spent more than six years in diligently
5    prodding his attorney to file the petition.  As in Busby, petitioner's counsel assured him that work
6    was being conducted in preparation for the filing of his petition, and petitioner in both cases was
7    not alerted that he needed to act on his own behalf to protect his rights.  In both cases, petitioners
8    were untrained in habeas law and incarcerated.  Both petitioners were reasonable in their actions.

9           Respondent cites a Second Circuit case, Doe v. Menefee, 391 F.3d 147, 175 (2d Cir.
10   2004), in arguing that petitioner's ability to file his first habeas petition in *pro se* indicates both
11   that he could have evaluated his attorney's performance and he could have filed a habeas petition
12   on his own.  Both of these points are undermined by the aforementioned Ninth Circuit's
13   evaluation and its reliance on Doe v. Busby.

14          Turning to respondent's first argument, that the record does not reflect petitioner's
15   diligence through the entire period, the record reflects for the most part a consistent pattern of
16   diligence.  Respondent places great emphasis on a 14 ½ month gap in time during which there is
17   no record that petitioner contacted Mr. Wiseman or that he was contacted by Wiseman.  This
18   period, from August 7, 2007 to October 20, 2008, cannot be explained by Respondent's Exhibit A
19   which are prison logs indicating petitioner's external movements for the period from November
20   1, 1985 to February 10, 2015, but not including the period from December, 2004 to May, 2008 at
21   Pleasant Valley State Prison ("PVSP,") as those records were apparently not available.  Res't's
22   Ex. A, ECF No. 69 at 11-18; Res't's Brief, Id. at 3, n. 1.  From July 5, 2007 to May 21, 2008,
23   petitioner was housed at SVSP.  Id. at 12.  Due to the lack of mail logs and other records, it is
24   impossible to determine whether petitioner was in segregated housing or had no access to his
25   legal property, or whether there was some other reason why he failed to contact his attorney.  On
26   May 21, 2008 petitioner was moved to Salinas Valley State Prison and stayed there until after the
27   end of the period at issue.  Id.  It does appear from the prison mail logs that between June 19,
28   2008 and October 20, 2008, petitioner was able to send mail out, but did not address any of this

7

mail to his attorney until October 20, 2008.[3]  Id. at 22.

The *in camera* submissions do not shed light on this gap.  Of note, the letter from petitioner to Wiseman, dated October 20, 2008 that is reflected in the prison mail logs, (ECF No. 69 at 5), is not in either the expanded record or the *in camera* submissions.  In any event, a 14 month gap over an entire span of more than six years does not diminish the repeated and numerous efforts, totaling 36 letters[4] in all prior to June 3, 2011, made by petitioner to prod his attorney into filing a petition.  Petitioner need only show reasonable diligence, not "maximum feasible diligence."

As set forth by the Ninth Circuit in its remand opinion, petitioner kept in touch with Wiseman consistently and regularly, and he was reasonable in continuing to rely on Wiseman's assurances.  Both the expanded record and the *in camera* submissions bear this out.  Not once did Wiseman inform petitioner about a statute of limitations deadline; rather he assured petitioner throughout that his petition was progressing and would be filed.  After the statute expired, Wiseman wrote to petitioner 17 times, and assured him that his federal petition was progressing. See e.g. ECF No. 65-2 at 19 (outlining Wiseman's filing of the state court petitions and his intent to send petitioner a petition to be filed with the state supreme court); id. at 22 (once case has finished with the California Supreme Court a fully exhausted federal petition could be re-filed); id. at 23 (same); id. at 24 (enclosing state supreme court petition and informing petitioner that once it is filed, all claims will be exhausted and they could return to federal court with a new federal petition); id. at 41-42 (outlining all grounds to be raised in federal petition and requesting petitioner's input on same, and requesting information on whereabouts of trial transcripts); id. at 44 (informing petitioner that more work could not be done on the petition because trial transcripts were needed but could not be located so new transcripts were being ordered, and that letter requesting court approval for those fees had been sent); id. at 49-50 (outlining grounds going

---

[3]  From June 19, 2008 to October 20, 2008, petitioner did mail five letters to superior courts, one letter to the "Director of Corr.," and one letter to attorney Wiseman.  (ECF No. 69 at 22.)

[4]  This number is based on a total number of letters written by petitioner to Wiseman from the time of his appointment in May, 2004 through June 3, 2011, as counted in the expanded record, the *in camera* submission, and respondent's log.  (ECF No. 69 at 3-6.)  Petitioner wrote a total of 29 letters to Wiseman from February 14, 2005, the date the statute expired, until June 3, 2011.

forward with habeas petition); id. at 51-52 (enclosing draft of habeas petition); id. at 56-57 (addressing issues raised by petitioner and explaining why they would or would not be included in petition); id. at 62 (informing petitioner that amended habeas petition had been filed).

Based on these communications and more, petitioner was reasonable to rely on Wiseman's assurances that his federal habeas petition would be timely filed. Furthermore, there is nothing in the expanded record or *in camera* submissions that would have alerted petitioner of the statute of limitations or the need to take action. As in Busby, petitioner relied on his attorney's erroneous advice, in this case that an amended petition could be filed despite Wiseman's mistaken understanding that such a petition could relate back to an earlier filed but voluntarily dismissed petition. Doe's lawyer similarly gave his client incorrect advice that a missed filing deadline was not a concern because a late petition could not be filed until new evidence was discovered. Busby, 661 F.3d at 1013-1014.

Therefore, this court finds that petitioner diligently pursued his rights through the date that the operative federal petition was filed, June 3, 2011. Accordingly, the federal petition, filed June 3, 2011, although untimely in the legal sense, must be reviewed on its merits based upon equitable tolling.

CONCLUSION

Accordingly, IT IS RECOMMENDED that:

1. The amended petition, filed June 3, 2011, (ECF No. 15), be reinstated as timely filed based on equitable tolling principles, and all previous orders dismissing the petition be vacated.

2. Respondent should be directed to file an answer to the amended petition within sixty days from the date of an order adopting these Findings and Recommendations. See Rule 4, 28 U.S.C. foll. § 2254. An answer shall be accompanied by all transcripts and other documents relevant to the issues presented in the petition. See Rule 5, 28 U.S.C. foll. § 2254.

3. Petitioner's reply, if any, should be filed and served within thirty days after service of the answer.

////

////

    4. The petition for writ of habeas corpus in this case should be denied.[5]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 21, 2015

                              <u>/s/ Gregory G. Hollows</u>
                             UNITED STATES MAGISTRATE JUDGE

GGH:076/Luna0627.ord

---

[5] The undersigned has been aided by the very competent presentation of both counsel in this case.